# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| ASHLEY RENEE BISHOP, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-363-PRC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Ashley Renee Bishop on August 23, 2017, and an Opening Brief of Plaintiff in Social Security Appeal [DE 13], filed by Plaintiff on January 2, 2018. Plaintiff requests that the June 9, 2016 decision of the Administrative Law Judge denying her claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On February 7, 2018, the Commissioner filed a response, and Plaintiff filed a reply on March 20, 2018. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On March 12, 2012, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning March 12, 2014. The applications were denied initially and on reconsideration. Administrative Law Judge Stephanie Katich ("ALJ") held a hearing. In attendance at the hearing were Plaintiff, Plaintiff's attorney, and an impartial vocational expert. On June 9, 2016, the ALJ issued a written decision denying benefits, making the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since March 12, 2014, the alleged onset date.

3. The claimant has the following severe impairments: bipolar disorder with schizophrenic tendency, borderline personality disorder, generalized anxiety disorder, and severe depression.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember and carry out simple instructions and tasks, she can make judgments on simple work related decisions, she can respond appropriately to usual work situations, she can respond appropriately to occasional, brief and superficial interactions with coworkers and supervisors, she should avoid work activity involving the general public, and she can deal with routine changes in a routine work setting.

6. The claimant is unable to perform her past relevant work.

7. The claimant was born [in 1988] and was 25 years old, which is defined as younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 12, 2014, through the date of this decision.

(AR 13-24).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and

the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

4

expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual functional capacity (RFC). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th

5

Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks remand of the ALJ's decision, arguing that the ALJ failed to account for Plaintiff's moderate limitations when assessing Plaintiff's mental residual functional capacity; improperly evaluated Plaintiff's testimony regarding her symptoms; and improperly weighed the opinion of her treating psychiatric nurse, the opinion of Brian Warner, and the opinions of the state agency reviewing psychologists. The Court considers each argument in turn.

### A. Mental Residual Functional Capacity

The residual functional capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence

includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

In this case, the ALJ found that Plaintiff had no exertional limitations. Rather, the RFC assessed only mental limitations, providing that Plaintiff can (1) understand, remember, and carry out simple instructions and tasks; (2) make judgments on simple work related decisions; (3) respond appropriately to usual work situations; (4) respond appropriately to occasional, brief, and superficial interactions with coworkers and supervisors; (5) avoid work activity involving the general public; and (6) deal with routine changes in a routine work setting. The ALJ included each of these limitations in the hypothetical question posed to the vocational expert. (AR 106-107). Plaintiff argues that this mental RFC and corresponding hypothetical do not account for specific limitations identified by the state agency psychologists and do not account for the moderate limitations in concentration, persistence, and pace that the ALJ found at step three of the sequential analysis. (AR 15).

First, Plaintiff reasons that the ALJ gave great weight to the opinion of state agency psychologist Dr. Hill but did not include the following moderate limitations that Dr. Hill assessed in rating Plaintiff's mental ability to perform sustained work activities in the question section at the

7

outset of the mental residual functional capacity assessment form: (1) to respond appropriately to changes in the work setting; (2) to work in coordination with or in proximity to others without being distracted by them; and (3) to complete a normal workday and work week without interruptions by psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (AR 127-29).

Indeed, the RFC conflicts with Dr. Hill's assessment in that Dr. Hill opined that Plaintiff would have moderate difficulties in responding appropriately to changes in the work setting, whereas the RFC states that Plaintiff can deal with routine changes in a routine setting. The mental RFC form explains that the question section provides a format to help determine the individual's ability to perform sustained work activities but the "actual mental residual functional capacity assessment is recorded in the narrative discussion(s)." (AR 127). However, regarding the similarly formatted "MRFCA" form, the Seventh Circuit Court of Appeals has "declined to adopt a blanket rule that the checked boxes on the MRFCA form indicating moderate difficulties in mental functioning need not be incorporated into a hypothetical to the VE." *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) (citing *Yurt v. Colvin*, 758 F.3d 850, 858 (7th Cir. 2014)); *Yurt*, 758 F.3d at 858 (rejecting the argument that "we should be unconcerned . . . with the failure of the ALJ to mention the six areas where [the state psychologist] found moderate limitations because the narrative portion of the form adequately 'translated' these limitations into a mental RFC that the ALJ could reasonably adopt").

In this case, neither the narrative discussion nor the "MRFC - Additional Explanation" addresses this moderate limitation in responding to changes in the work setting. Although Dr. Hill wrote in the "MRFC - Additional explanation" that Plaintiff can "manage the stresses involved with simple

work," Dr. Hill did not provide any qualifications regarding Plaintiff's ability to deal with *changes* in the work setting, which is medical evidence that cannot be ignored. (AR 129); *see Varga*, 794 F.3d at 816.

As for Dr. Hill's opinion that Plaintiff has moderate limitations in completing a normal workday and work week without interruptions by psychologically based symptoms and in performing at a constant pace without an unreasonable number and length of rest periods, the RFC is silent as to these limitations and it is not clear that the "MRFC - Additional explanation" "adequately encapsulates and translates" these limitations. *See Varga*, 794 F.3d at 816 (citing *Johansen v. Barnhart*, 314 F.3d 283, 286 (7th Cir. 2002)). Importantly, the ALJ does not cite or discuss Dr. Hill's mental RFC assessment in the ALJ's own RFC determination, citing instead only Dr. Hill's ratings for the "B" criteria in the listings. *See* (AR 21) (citing Exhibits 3A and 6A for the ratings for the "B" criteria in the listings but not citing or discussing Exhibit 2A, which includes the mental RFC). Thus, the ALJ did not explain either how the RFC accommodates these assessed limitations or why she did not include them in the RFC. And, the Commissioner did not respond to this argument in the response brief. Remand is required for the ALJ to consider these limitations and either include them in the RFC as well as the hypothetical or to explain why they are not included. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (holding that the ALJ must build a "logical bridge from the evidence to his conclusion").

Second, Plaintiff argues that the ALJ did not include in the RFC or the hypothetical the limitations necessary for Plaintiff's moderate limitations in concentration, persistence, and pace. The Seventh Circuit Court of Appeals has held that the ALJ must present a hypothetical to the vocational expert that sets out the "totality of a claimant's limitations," including "deficiencies of

9

concentration, persistence and pace." *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (quoting *O'Connor-Spinner*, 527 F.3d at 619). In *O'Connor-Spinner*, the court explained that terms like "'simple, repetitive tasks' *on their own* will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." 627 F.3d at 620 (emphasis added). This is because the ability to learn how to do a task of a certain complexity is not the same as the ability to do the given task over a sustained period of time. *Id*. at 620. Although no "specific terminology" is required, the hypothetical question posed to the vocational expert must account in substance for the specific limitations of the claimant. *Id.* at 619 (noting that courts have upheld a hypothetical when "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform"); *see also Varga*, 794 F.3d at 814; *Yurt*, 758 F.3d at 856, 858-59; *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008). In some instances in which the hypothetical does not include all the limitations, the court can assume the VE's familiarity with the claimant's limitations if the VE independently reviewed the medical record or heard testimony addressing the missing limitations. *See Moreno*, 882 F.3d at 730 (quoting *O'Connor-Spinner*, 627 F.3d at 619).

Plaintiff argues that the limitation to simple instructions and tasks along with the additional limitations in the RFC do sufficiently address Plaintiff's limitations in concentration, persistence, and pace. Again, the ALJ offered no discussion of Dr. Hill's mental RFC findings, citing only the category ratings for the "B" criteria of the listings (mild limitations in concentration, persistence, and pace; moderate difficulty maintaining social functioning; moderate difficulty maintaining concentration, persistence, and pace; and no episodes of decompensation). Thus, the ALJ offered

no analysis of how Plaintiff's moderate limitations in concentration, persistence, and pace are accounted for in this mental RFC, including Dr. Hill's opinion that Plaintiff is moderately limited in her ability to work in coordination with or in proximity to others without being distracted by them and that Plaintiff is moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 127-28). Remand is necessary to allow the ALJ to create a logical bridge between the opinion evidence, to which she gave great weight, and the mental RFC. *See Moreno*, 882 F.3d 730.

### B. Subjective Complaints

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a), 416.1529(a); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *3. The "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2.

11

Plaintiff argues that the ALJ made several errors in discounting Plaintiff's subjective complaints. Contrary to the Commissioner's response brief, Plaintiff is not asking the Court to reweigh the evidence but rather is identifying favorable evidence that the ALJ did not discuss. An ALJ may not discuss only the evidence that supports her conclusion while ignoring contrary evidence. *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (citing *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016). The Seventh Circuit Court of Appeals has recognized that "[t]his 'cherry-picking' is especially problematic where mental illness is at issue, for 'a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition.'" *Meuser*, 838 F.3d at 912 (quoting *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011)).

First, Plaintiff argues that the ALJ's finding that Plaintiff's testimony is not corroborated by objective medical evidence is based on a selective assessment of the record. The ALJ commented that, contrary to Plaintiff's testimony that she can only pay attention for about ten minutes, that she has problems around groups of people, and that she has episodes of mania during which she throws, yells, screams, and hits people, "mental status examinations by acceptable sources revealed that she had essentially normal cognition and her concentration and attention were intact. Additionally, her mood has generally improved with treatment." (AR 20-21) (citing Exs. 16F/15, 12F/2, 15F/6). However, in the very treatment records of Ms. Greenwald, Plaintiff's psychiatric nurse practitioner, cited by the ALJ, the mental exam findings for Plaintiff's concentration and attention were listed as "indecisive, distractibility/poor concentration." (AR 625) (Ex. 12F/2); (AR 653) (Ex. 15F/6). Moreover, in all of the sixteen other mental status examinations by Ms. Greenwald, since Plaintiff's

12

onset date, Plaintiff had the same problem with concentration and attention. (AR 519-522, 552, 553, 584, 610, 611, 615, 650, 656, 789, 792, 794). The same records have varying reports regarding whether Plaintiff's mood had improved. On remand, the ALJ is directed to discuss these mental status exam findings in the context of assessing Plaintiff's concentration and attention.

Second, Plaintiff argues that the ALJ engaged in impermissible conjecture when she found that Plaintiff's treatment was not "entirely consistent" with her testimony on the basis that "she has rarely been hospitalized and her hospitalizations were of short duration." (AR 21); *see Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) (finding that the ALJ "went far outside the record when he said that if Voigt were as psychologically afflicted as Day thought, he 'would need to be institutionalized and/or have frequent inpatient treatment"—a medical conjecture that the administration law judge was not competent to make" (citing *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009))). Moreover, at all relevant times, Plaintiff was receiving intensive outpatient treatment, seeing Ms. Greenwald eighteen times for medications and psychotherapy and, since December 2014, seeing Laurel Tinsley twenty-six times for issues with anxiety, anger, and aggression. The ALJ did not discuss this ongoing treatment. And, as discussed below, Plaintiff was treated with a series of different medications, apparently without significant improvement. On remand, the ALJ is directed to consider Plaintiff's longitudinal treatment records and the nature of that treatment in explaining why the lack of hospitalization contradicts Plaintiff's statements about the intensity, persistence, and limiting effects of her psychological symptoms.

Third, Plaintiff argues that the ALJ erred in her consideration of the evidence regarding Plaintiff's "alleged level of mental dysfunction." (AR 21). The ALJ noted that, despite Plaintiff's

long history of mental impairments, Plaintiff was able to graduate from high school, worked despite her mental health conditions for several years, and did not have any legal issues. The ALJ also noted that, besides significant issues with her husband, there was little evidence of significant problems with anger. However, the evidence of record suggests that Plaintiff's mental condition worsened over time. *See Scrogham v. Colvin*, 765 F.3d 685, 696 (7th Cir. 2014). Also, although there is no evidence that Plaintiff was charged with a crime, there is evidence she was taken by a police officer under court order for a mental hospitalization and that local law enforcement was involved at times. (AR 519, 643, 644, 737). On remand, the ALJ is directed to consider this favorable evidence.

Finally, Plaintiff contends that the ALJ erred in finding that the medical record indicates that Plaintiff's "medications and treatment were effective in abating and controlling her symptoms." (AR 21). Plaintiff's treating source, Ms. Greenwald, who provides her medications, found that the medications were not effective in treating Plaintiff's mood and that electroconvulsive therapy was being considered. (AR 809). The longitudinal treatment records show that Plaintiff's medications were changed, including a prescription for Lithium, and adjusted because of ineffectiveness, none of which the ALJ discussed. *See* (AR 520, 519, 553, 552, 554, 611, 655, 652, 794, 792, 790). On remand, the ALJ is directed to discuss Plaintiff's medication treatment history in the context of any renewed finding that Plaintiff's medications and treatment are effective in abating and controlling her symptoms.

### C. Weight to Opinion Evidence

1.  *Tina Greenwald, Plaintiff's treating psychiatric nurse*

On May 3, 2016, Ms. Greenwald authored a letter, ultimately recommending disability benefits be awarded to Plaintiff. (AR 809). In support, Ms. Greenwald indicated that Plaintiff had

14

been in her care since October 28, 2013, for ongoing issues with schizoaffective disorder, intermittent explosive disorder, and borderline personality disorder. *Id*. Ms. Greenwald explained that Plaintiff "has tried and failed on multiple medication regimens and has not had any extended period of stability over the years I have treated her. It has come to the point where we are currently using Lithium and a new antipsychotic that has only been available to the general public for a few weeks in an attempt to stabilize" Plaintiff. *Id*. Ms. Greenwald explained that she rarely recommends Lithium because of the serious side effects but felt that she had no choice in Plaintiff's case. *Id*. Then, Ms. Greenwald explains that the next step would be electroconvulsive therapy, which they had discussed. *Id*. Ms. Greenwald reported that Plaintiff can become paranoid and engage in delusional thoughts. *Id*. Ms. Greenwald recommended disability benefits for Plaintiff as she believed it would be beneficial for both Plaintiff and others, commenting that Plaintiff "can become frustrated and act out angrily taking her aggression out on others." *Id*.

In her decision, the ALJ considered Ms. Greenwald's opinion but gave it no weight because "[i]t is not a medical source statement, it is a legal conclusion, an administrative finding, based upon medical and non-medical factors." (AR 22). Under Social Security Ruling 06-03p, the ALJ "generally should explain the weight given to the opinions" from "other sources" "or otherwise ensure that the discussion of the evidence in the determination or decision allows the claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006); *see also Voigt*, 781 F.3d at 878. The factors listed in 20 C.F.R. § 416.927(c) can be applied to opinion evidence from "other sources," such as Ms. Greenwald, and the factors include how long the source is known and how frequently the source sees the individual, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an

15

opinion, how well the source explains the opinion, whether the source has a special area of expertise related to the individual's impairment, and any other factors that tend to support or refute the opinion. *See* SSR 06-03p, 2006 WL 2329939, at *2-3; 20 C.F.R. §§ 404.1527, 416.927.

The ALJ erred by failing to acknowledge and discuss the length of the treating relationship and the medical findings contained within Ms. Greenwald's May 3, 2016 letter. Ms. Greenwald treated Plaintiff for two and a half years, and Ms. Greenwald is a psychiatric mental health nurse practitioner. The ALJ failed to discuss the evidence from Ms. Greenwald's treatment records regarding Plaintiff's medication history as well as the results of the MMPI-II test administered by Mr. Warner, all of which supports Ms. Greenwald's assessment of Plaintiff's limitations in the May 3, 2016 opinion letter. Moreover, the letter is not simply a statement that Plaintiff is "disabled," as suggested by the ALJ, but rather provides an explanation, grounded in the treatment record, for why Ms. Greenwald believes that Plaintiff cannot work, namely because Plaintiff acts out angrily and aggressively to others. (AR 809). The ALJ erred in assessing Ms. Greenwald's May 3, 2016 opinion letter, and remand is required on this basis.

2.     *Opinion of Brian Warner*

In September 2015, Brian Warner, M.A., LCSW, Licensed School Psychologist, conducted a psychodiagnostic evaluation of Plaintiff. In his observations, Mr. Warner found that Plaintiff's capacity to deal with external stress, such as to be found in a typical work environment is "unlikely." (AR 645). He found that she "is very fragile and very excessive in her hyper-responsiveness to real or perceived stress and challenges in her life" and "is unpredictable and can be violent and aggressive." *Id*. He found that the degree of aggressiveness is "well beyond the normal range and

could be considered dangerous to herself as well as dangerous to others." *Id*. Mr. Warner administered the MMPI-II.

In his "recommendations," Mr. Warner provided three recommendations. In the first, Mr. Warner wrote that Plaintiff "should be considered an appropriate candidate for Social Security Disability." (AR 646). He then set out the basis for this recommendation, namely that the significance of Plaintiff's psychiatric problems and case history indicate a high degree of volatility and extreme psychiatric involvement, that it is very likely that these symptoms and conditions will be manifest for a significant amount of time and that the ability to bring them under control and to obtain stabilization and consistency will be an ongoing challenge, that Plaintiff cannot be considered a safe colleague in a work environment as she has demonstrated the potential to be a danger to herself as well as to others, and that this condition and history cannot be "underestimated, minimized, or overlooked when one considers a responsibility to perform due diligence, to protect, and to warn of possible dangers to the patient as well as others." *Id*. The second recommendation was that Plaintiff should continue with twice-weekly psychotherapy and strict adherence to medications. (AR 647). The third recommendation was that Plaintiff is not "capable of responding to employment opportunities, vocational pursuits, or further educational training given the volatility of her current psychiatric condition." *Id*.

In her decision, the ALJ addressed only Mr. Warner's third recommendation and one excerpt from the first recommendation that Plaintiff's "ability to perform any type of work is compromised if not forfeited." (AR 22) (citing Ex. 14F). The ALJ then gave Mr. Warner's opinion "little weight" because Plaintiff worked in the past despite her mental health impairments, "had a good response to ongoing treatment," and "the evidence does not demonstrate significant residual symptoms." (AR 22). This analysis of Mr. Warner's opinion is not supported by substantial evidence and requires

remand. The ALJ ignored the substance of the first recommendation, which provides the basis for Mr. Warner's opinion based on Plaintiff's history and his personal observations. The ALJ also did not address the results of the MMPI-II, which demonstrated that Plaintiff's ability to use psychological defense mechanisms to deal with stress in a healthy way is almost non-existent, that the stresses of Plaintiff's environment overwhelm her, that she has low self esteem, that she has paranoid ideation, that she "distorts things" and feels suspicious, and that she feels victimized and reacts in kind. (AR 645-46).

3.  *Opinions of Dr. Hill and Dr. Unversaw, non-examining state agency psychologists*

Finally, Plaintiff argues that the ALJ should have given less weight to the opinion of Dr. Hill, which was affirmed by Dr. Unversaw. On remand, in weighing Dr. Hill's opinion, the ALJ is directed to consider the findings regarding Plaintiff's activities of daily living and Plaintiff's concentration and attention.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Opening Brief of Plaintiff in Social Security Appeal [DE 13], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

So ORDERED this 14th day of August, 2018.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT